IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-01416-KLM

DERRICK A. POLLAND,

    Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

    Defendant.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Plaintiff's **Amended Motion for Reconsideration of the Court's Order Granting Summary Judgment [Doc. 37]** [#40][1] (the "Motion"). Defendant filed a Response [#43] in opposition to the Motion, and Plaintiff filed a Reply [#45]. The Court has reviewed the Motion, the Response, the Reply, the entire docket, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Motion [#40] is **DENIED**.[2]

This lawsuit was filed on April 19, 2019, and removed to federal court on May 17, 2019. *See Compl.* [#3]. A Scheduling Conference was held on July 22, 2019. *See* [#18, #19]. On August 30, 2019, Defendant filed its Amended Early Motion for Summary

---

[1] "[#40]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). The Court uses this convention throughout this Order.

[2] This case has been referred to the undersigned for all purposes pursuant to D.C.COLO.LCivR 40.1(c) and 28 U.S.C. § 636(c), on consent of the parties. See [#11, #13].

Judgment [#25] (the "Early Motion"). Plaintiff filed a Response [#29] in opposition on September 20, 2019, and Defendant filed a Reply [#32] on September 30, 2019. The Court issued an Order [#37] granting the Early Motion [#25] on October 25, 2019.

In the present Motion [#40], Plaintiff asks the Court to reconsider its Order [#37]. A motion for reconsideration "is an extreme remedy to be granted in rare circumstances." *Brumark Corp. v. Samson Res. Corp.*, 57 F.3d 941, 944 (10th Cir. 1995). It is well-established in the Tenth Circuit that grounds for a motion to reconsider are limited to the following: "(1) an intervening change in the controlling law; (2) new evidence previously unavailable; and (3) the need to correct clear error or prevent manifest injustice." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (citing *Brumark*, 57 F.3d at 948). Therefore, a motion to reconsider is "appropriate [only] where the court has misapprehended the facts, a party's position, or the controlling law." *Id.* Here, Plaintiff bases his Motion [#40] on two grounds: (1) newly discovered evidence, and (2) the need to prevent clear error and manifest injustice. *Motion* [#40] at 3.

**A.     Additional Discovery**

As a preliminary matter, the Court addresses Plaintiff's request for additional discovery pursuant to Fed. R. Civ. P. 56(d). *Motion* [#40] at 21. In his Response [#29] to the Early Motion [#25], Plaintiff neither asked the Court to delay ruling on the Early Motion [#25] because the parties were still in discovery nor otherwise suggested that any specific discovery was needed for Plaintiff to fully respond to the Early Motion [#25]. Similarly, no such request was independently filed on the electronic docket prior to the date the Court issued its Order [#37] granting the Early Motion [#25], i.e., October 25, 2019. To the extent that Plaintiff belatedly asks in the present Motion [#40] for additional discovery pursuant to

-2-

Fed. R. Civ. P. 56(d), the request is out-of-time, and the request is **denied**.  Rule 56(d) clearly contemplates making this request at or before the time for a response to a motion for summary judgment is due, not after a ruling has issued on the motion.  Fed. R. Civ. P. 56(d) ("If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.").

**B.     New Evidence**

Plaintiff generally points to purportedly new evidence obtained from Dr. John Barker ("Barker") on October 21, 2019 (four days before the Order [#37] on the Early Motion [#25] was issued) and to purportedly new evidence obtained at the deposition of Marsha Harris ("Harris"), which was held on October 18, 2019 (seven days before the Order [#37] was issued).  *Motion* [#40] at 3-8.

Where a party seeks Rule 59(e) relief to submit additional evidence, "the movant must show either that the evidence is newly discovered [or] if the evidence was available at the time of the decision being challenged, that counsel made a diligent yet unsuccessful effort to discover the evidence."  *Somerlott v. Cherokee Nation Distribs.*, 686 F.3d 1144, 1153 (10th Cir. 2012) (quoting *Comm. for First Amendment v. Campbell*, 962 F.2d 1517, 1523 (10th Cir. 1992)).  For example, in *Kirby v. Resmae Mortgage Corporation*, 626 F. App'x 746, 748-49 (10th Cir. 2015), the Tenth Circuit Court of Appeals affirmed a district court's decision to deny a motion for reconsideration based on new evidence where the evidence at issue was a public record which had been available since 2006 and where the

plaintiff "offered no explanation for his failure to discover it sooner."

### 1. Dr. Barker

On October 21, 2019, Dr. Barker provided to Plaintiff the information contained in Plaintiff's medical file which Dr. Barker had provided to State Farm prior to the start of this litigation. *Motion* [#40] at 7. Plaintiff offers no explanation for why this "new evidence" was "previously unavailable." *See Servants of Paraclete*, 204 F.3d at 1012. Dr. Barker was Plaintiff's treating physician subsequent to the accident, and so there can be no question that Plaintiff knew of his existence at the onset of this litigation. *See Ex. 2, Attending Physician's Statement* [#39-2]; *Ex. 3, Attending Physician's Statement* [#39-3]. It is clear, therefore, that this evidence was "available at the time of the decision being challenged," but Plaintiff has failed to show that "counsel made a diligent yet unsuccessful effort to discover the evidence." *See Somerlott*, 686 F.3d at 1153. There is no reason supplied in the Motion [#40] or Reply [#45] on which the Court could find that Plaintiff could not have asked the Court to delay ruling on the Early Motion [#25] in order to obtain a file which Plaintiff knew existed long before September 20, 2019, the date when Plaintiff filed his Response [#29] to the Early Motion [#25]. *See* Fed. R. Civ. P. 56(d). It is especially perplexing why this request was not made given that one of the primary issues raised in the Early Motion [#25] concerned Plaintiff's medical records and whether and when such records (or, at the least, a release for records) were obtained by, or could have been obtained by, Defendant. *Order* [#37]. This is simply not a situation where it was unknown that the evidence at issue existed and would likely be material to the Early Motion [#25].

Accordingly, the Court finds that the "new evidence" from Dr. Barker was not "new evidence previously unavailable," and the Motion [#40] is **denied** to the extent it is based

on such.

**2.     Ms. Harris**

Plaintiff next points to the deposition of Ms. Harris, a claims adjuster for Defendant, which took place on October 18, 2019.  *Motion* [#40] at 3.  Plaintiff lists fifteen pieces of information provided by Ms. Harris at this deposition.  *Id.* at 4-6.  Plaintiff concedes that he had the relevant claim file at the time when he filed his Response [#29] to the Early Motion [#25], but states that the claim file was redacted to withhold post-litigation claim information.  *Id.* at 6.  Plaintiff also concedes that "not all the information [listed] is completely new," but he argues that "*the explanations* provided by Ms. Harris regarding the entries at her deposition is new information that directly contradicts State Farm's allegations in support of summary judgment and is new information that Plaintiff could not have been obtained earlier."  *Id.* at 6-7 (emphasis in original).

Assuming, arguendo, that some or all of this evidence is "new," a similar issue arises here as the one addressed in connection with Dr. Barker.  Pursuant to Fed. R. Civ. P. 30(b)(1), "[a] party who wants to depose a person by oral questions must give reasonable written notice to every other party."  Plaintiff deposed Ms. Harris on October 18, 2019, and thus it is clear that Plaintiff knew reasonably in advance of that date that he expected to depose Ms. Harris.  Therefore, long before the Court issued a ruling on the Early Motion [#25], Plaintiff could have asked the Court to delay its ruling if he believed that the testimony provided by Ms. Harris could reasonably have been expected to impact the Early Motion [#25].

Even aside from the specifics surrounding the date of the deposition of Ms. Harris, there is nothing unusual or surprising about deposing a claims adjuster in this type of case;

indeed, such a deposition is routine. Given the issues raised in the Early Motion [#25], it seems elementary that Plaintiff could have anticipated that the deposition of the claims adjuster would provide information which would have impacted Plaintiffs' Response [#27] to the Early Motion [#25]. This is not a situation where a "surprise witness" came to light who unexpectedly had material information. In other words, with reasonable diligence, Plaintiff should have foreseen the need to depose Ms. Harris and utilized Fed. R. Civ. P. 56(d) to ask the Court to delay (or deny without prejudice) a ruling on the Early Motion [#25] until after Plaintiff could depose the claims adjuster. There is no basis in the Motion [#40] or Reply [#45] on which the Court could rule that Plaintiff could not have obtained this information sooner or else asked the Court to delay a ruling in anticipation of the deposition. Even if Plaintiff did not anticipate that Ms. Harris would have any information to impact the Early Motion [#25] (which, again, seems unlikely), Plaintiff could have immediately filed a notice or a motion following the deposition to inform the Court that new evidence had come to light and that Plaintiff wanted time to supplement his Response [#27] to the Early Motion [#25]. None of these things were done. Plaintiff simply did not show the diligence required to meet the reconsideration standard here. *See Somerlott*, 686 F.3d at 1153.

Accordingly, the Court finds that the "new evidence" from Ms. Harris was not "new evidence previously unavailable," and the Motion [#40] is **denied** to the extent it is based on such.

## C.     Clear Error and Manifest Injustice

Much of Plaintiff's argument here consists of new argument raised for the first time which could and should have been raised in the Response [#27] to the Early Motion [#25]

instead. "Revisiting the issues already addressed is not the purpose of a motion to reconsider, and advancing new arguments or supporting facts which were otherwise available for presentation when the original summary judgment motion was briefed is likewise inappropriate." *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991) (internal quotation marks and brackets omitted). Some of Plaintiff's arguments in the present Motion [#40] are directed at arguments made by Defendant in connection with the summary judgment briefing [#25, #32], rather than at any clear error made by the Court in its Order [#37]. Pursuant to *Van Skiver v. United States*, the Court does not directly address any such new arguments here.

Before turning to the specifics of Plaintiff's "clear error" arguments, the Court makes several additional observations. In its Order [#37] adjudicating the Early Motion [#25], the Court had noted, in part, that Plaintiff did not explicitly dispute any of the following: (1) the insurance policy includes a duty to cooperate with Defendant in its investigation and settlement of claims; (2) the additional information sought by Defendant was "critical" to the resolution of the claim; (3) Plaintiff did not state or suggest in the February 25, 2019 letter that all the requested records had been provided, (4) the Lumbar Estimate is dated fourteen months prior to when it was actually sent to Defendant; (5) Defendant could not make use of the Medical Authorization Form because Plaintiff never submitted the names of his medical providers from the five years prior to the accident which Defendant requested in writing many times over a two-year period; (6) Plaintiff possessed the requested underlying Wage Documentation and provided it to an economist, Jeffrey Opp, who used it to prepare the Opp Report; and (7) Plaintiff did not independently provide or attach any of that Wage Documentation to the Opp Report itself when he sent it to

Defendant.  *Order* [#37] at 8-10.

The Early Motion [#25] and accompanying Response [#29] and Reply [#32] simply did not present a situation similar to those in, for example, *Cribari v. Allstate Fire & Casualty Insurance Company*, 375 F. Supp. 3d 1189 (D. Colo. 2019), and *Stoole v. Metropolitan Property and Casualty Insurance Company*, No. 17-cv-00613-NYW, 2018 WL 3126112 (D. Colo. June 26, 2018), where significant issues of material fact barred entry of summary judgment regarding the plaintiff's duty to cooperate.  It is true that "whether a party has performed its obligations under a contract [i.e., the insurance policy] or breached is a question of fact."  *Stoole*, 2018 WL 3126112, at *4.  However, the Court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  This includes cases regarding the duty to cooperate with accompanying bad faith claims.  *See Edge Constr., LLC v. Owners Ins. Co.*, No. 14-cv-00912-MJW, 2015 WL 4035567, at *6 (D. Colo. June 29, 2015) (finding no genuine issues of material fact and entering judgment in favor of the defendant insurer on a motion for summary judgment concerning the duty to cooperate and accompanying bad faith claims), *aff'd*, *Sable Cove Condo. Assoc. v. Owners Ins. Co.*, 668 F. App'x 847 (Mem.) (10th Cir. 2016) ("[W]e AFFIRM for substantially the reasons stated in the district court's decision.").

### 1. Duty to Cooperate

Plaintiff argues that "the Court's application of the law to the policy provision and facts in this case is error and should be reconsidered."  *Motion* [#40] at 14.  More specifically, Plaintiff argues that "[t]here is no evidence that [Plaintiff] failed to abide by a specific policy provision and therefore there can be no failure to cooperate."  *Id.*  Plaintiff

asserts that the policy "provides no duty for Plaintiff to list his prior providers in the way that State Farm insists (putting the providers on a particular form)." *Id.* The Court notes that this argument was made nowhere in Plaintiff's Response [#29] to the Early Motion [#25]. Nevertheless, the Court briefly addresses it.

Plaintiff argues that a failure to cooperate cannot be found on the basis that Plaintiff failed to use Defendant's form to list his medical providers. *Motion* [#40] at 14. Plaintiff argues that "the policy required the insured to give medical record releases but did not require the insured to submit a list of medical providers." *Id.* Plaintiff relies heavily on *Ahamdi v. Allstate Insurance Company*, 22 P.3d 576 (Colo. App. 2001), a case not cited in his Response [#29] to the Early Motion [#37], for the proposition that "Colorado law explicitly provides that an insurer cannot deny a claim for failure to cooperate where the alleged failure is not in violation of a specific requirement in the insurance policy." *Motion* [#40] at 14-15. In *Ahamdi*, the insurer asked the claimants to submit to examinations under oath pursuant to the terms of the insurance policy. 22 P.3d at 577. The claimants complied and appeared, but the insurer then "demanded that each of the claimants be examined separately, outside the presence of the others." *Id.* at 578. In short, the parties disagreed as to how the examinations should be conducted, which led to the examinations not proceeding, and the insurer denied the claimants' claims on the basis that they "had failed to comply with the requirements to submit to reasonably requested examinations under oath and to cooperate in the investigation" of their claims. *Id.*

The Colorado Court of Appeals held that the claimants' "failure to submit to individual examinations under oath outside one another's presence did not constitute a breach of the insurance policy justifying Allstate's denial of their claims." *Id.* The general cooperation

clause did not mandate that the claimants be examined under oath outside one another's presence, and thus the issue became whether the claimants reasonably cooperated with the insurer. *Id.* at 580. The Court of Appeals held that an insurer could not unilaterally impose conditions on the claimants that were not explicitly authorized by the policy, and that the claimants were not required by the general cooperation clause to capitulate to such unilateral demands, so long as they were otherwise reasonably cooperating with the insurer's investigation. *Id.*

The Court finds that the circumstances underlying the *Ahamdi* decision were materially different from those underlying the present case. *Ahamdi* essentially held that disagreement over *how* to cooperate (when not explicitly delineated in the policy) was not the same as *failing* to cooperate. In the present case, the Court found that "Plaintiff does not dispute the facts that form the basis of Defendant's Motion [#25], i.e, that the Causation Letter and Lumbar Estimate did not contain the totality of the Medical Records that Defendant sought, that the Medical Authorization Form could not be used by Defendant because Plaintiff never gave his providers' names, and that Plaintiff never provided Defendant with the Wage Documentation underlying the Opp Report." *Order* [#37] at 12. The holding was not based on failure to provide information in the proper format, such as on the proper form; rather, the holding was based on the fact that the uncontested evidence showed that Plaintiff failed to give necessary information to Defendant despite repeated requests over a long period to do so. *Id.* at 11-12. The duty to provide this information is clearly encompassed by the following provisions of the policy which are unambiguous to the extent materially applicable to this case: (1) Insured's Duties § 4(a)(2) ("The insured must cooperate with us and, when asked, assist us in . . . securing and giving evidence .

. . .," *Policy* [#25-1] at 39, (2) Insured's Duties § 7(a)(1) ("A person making a claim . . . must . . . notify us of the claim and give us all the details about the death, injury, treatment, and other information that we may need as soon as reasonably possible . . . ," *id.* at 40.

Accordingly, the Court discerns no "clear error" here, and the Motion [#40] is **denied** with respect to Plaintiff's duty-to-cooperate argument.

### 2. Deliberate or Willful Failure to Cooperate

Plaintiff next argues that a failure-to-cooperate requires a finding that the failure was "due to bad intent or deliberate and willful falsification," and that there was no evidence of such in this case. *Motion* [#40] at 16-17.

In support, Plaintiff partly relies on a jury instruction issued in *Cribari v. Allstate*, No. 16-cv-02450-NRN, which stated in relevant part: "[I]f you find that any failure to cooperate was due to a mistake and there was no bad intent on the part of [the plaintiff] or her counsel in failing to cooperate, then you then [sic] must find in favor of the Plaintiff . . . on [Defendant's] affirmative defense of failure to cooperate." *Ex. 11* [#39-11]. The Court finds this citation unpersuasive for two reasons. First, there is no indication provided regarding the legal authority on which the instruction was based. Second, the instruction's explicit language only pertains to issues of mistake leading to a failure to cooperate, and mistake has not been raised as an issue in the present case.

Plaintiff also cites to *Farmers Automobile Inter-Insurance Exchange v. Konugres*, 202 P.2d 959 (Colo. 1949), and *Bagley v. Lumbermens Mutual Casualty Company*, 62 P.2d 469 (Colo. 1936), for the proposition that "[a] deliberate and willful falsification of material facts violations the terms of the insurance policy." *Motion* [#40] at 16. However, no issue

has been raised in this lawsuit regarding whether Plaintiff or his counsel falsified any material facts. The Court is aware of no case which holds that a failure-to-cooperate affirmative defense, under the circumstances of this lawsuit, requires the defendant to show bad intent or deliberate and willful falsification by the plaintiff or his counsel. In fact, legal authority is clear that an insurer need only show that the insured failed to cooperate in some material and substantial respect. *See, e.g.*, *Ahmadi*, 22 P.3d at 579.

Accordingly, the Court discerns no "clear error" here, and the Motion [#40] is **denied** with respect to Plaintiff's failure-to-cooperate argument.

### 3. Material and Substantial Disadvantage

Plaintiff next argues that the Court erred in finding that Defendant suffered a material and substantial disadvantage from Plaintiff's failure to cooperate, because (1) Defendant never denied or paid the claim; (2) the Court improperly imposed a requirement that the entirety of information be provided and the claim be fully investigated before a claim be evaluated and paid; and (3) the Court speculated that, if the information at issue had been provided, the claim would have been resolved. *Motion* [#40] at 17.

Plaintiff's first argument (with no citation to legal authority) appears to be that Defendant could not have been materially and substantially disadvantaged in the absence of denying or paying the claim. *Id.* at 17-18. However, case law is clear that a failure to provide information material to allowing an insurer to complete its investigation is, alone, enough to meet this requirement, because it puts Defendant in the position of either denying coverage or paying a claim without being able to reasonably investigate the validity of the claim. *See, e.g.*, *Walker v. State Farm Fire & Cas. Co.*, No. 16-cv-00118-PAB-STV,

2017 WL 1386341, at *3-4, 8 (D. Colo. Feb. 23, 2017).  Here, the Court found that, based on the evidence provided by the parties in connection with their briefs on the Early Motion [#37], there was no genuine issue of material fact that Defendant was, indeed, placed in this position.  *Order* [#37].

Plaintiff next argues that the Court improperly imposed a requirement that the entirety of information be provided and the claim be fully investigated before a claim be evaluated and paid.  *Motion* [#40] at 18.  Reading the Court's Order [#37] as a whole, the Court did not impose any such requirement in this case.  First, the Court noted that the "entirety" of the requested documents were not provided by Plaintiff and that Defendant could not, as a result, "fully" investigate the claim.  *Order* [#37] at 15.  The Court finds no "clear error" with respect to this straightforward proposition. No requirement was imposed here that all documents must be provided before a claim can be evaluated.  Second, as discussed throughout the Order [#37], the issue was that Plaintiff had not provided material information that was key to Defendant's determination regarding whether the claim should be denied or paid.  The Court's point here was that Plaintiff had not provided this material information and, in its absence, Defendant's efforts to investigate were hampered to the extent that, as a matter of law, it could not reasonably be expected to reach a conclusion regarding Plaintiff's claim. This ruling does not conflict with *Fisher v. State Farm Mutual Automobile Insurance Company*, 419 P.3d 985, 991 (Colo. App. 2015), which held that neither Colo. Rev. Stat. § 10–3–1115 nor the policy at issue required that "*all* of a claim be established beyond reasonable dispute before a duty to pay *some* of the claim that is not reasonably in dispute arises." (emphases in original).

Plaintiff also argues that the Court speculated that, if the information at issue had

been provided, the claim would have been resolved. *Motion* [#40] at 19. Plaintiff does not specify from where in the Court's Order [#37] Plaintiff construes this belief. Regardless, the Court disavows any such finding or holding. There is no way to know whether Plaintiff's claim would have been resolved by Defendant had all of the information at issue been provided, but that is not the legal test for a finding of material and substantial disadvantage. The test is whether Plaintiff's failure to cooperate precluded Defendant from adequately investigating the validity of Plaintiff's claim. *Walker*, 2017 WL 1386341, at *8.

Accordingly, the Court discerns no "clear error" here, and the Motion [#40] is **denied** with respect to Plaintiff's argument regarding material and substantial disadvantage.

### 4. Preclusion of Bad Faith Claims

Finally, Plaintiff argues that the Court improperly found that the finding of a failure to cooperate automatically precluded the bad faith claims. *Motion* [#40] at 20; *Reply* [#45] at 5. Plaintiff's argument here really consists simply of trying to take a "second bite of the apple," to make an argument which was not raised in his Response [#29] to the Early Motion [#25]. The Court went out of its way to liberally read Plaintiff's Response [#29] to glean any argument as to why summary judgment should not be entered in Defendant's favor on the bad faith claims. Plaintiff simply did not address Defendant's legal authority in the Early Motion [#37] regarding why those claims should be dismissed. *See* [#37] at 16 ("Because Plaintiff's breaches vitiate coverage, they also entitle State Farm to summary judgment on Plaintiff's second and third claims for common-law and statutory bad faith.").

In the present Motion [#40] and Reply [#45], Plaintiff again does not address any of the legal authority cited by the Court in its Order. *See* [#37] at 17-18. In the Early Motion

[#25] and Response [#43] to the present Motion [#40], Defendant cites *MarkWest Hydrocarbon, Inc. v. Liberty Mutual Insurance Company*, 558 F.3d 1184, 1193 (10th Cir, 2009). Plaintiff failed to address this case in his Response [#29] to the Early Motion [#25] and addresses it for the first time in his Reply [#45] to the present Motion [#40]. However, the Court did not rely on *MarkWest* in its Order [#37], and Plaintiff has failed to show that the Court committed clear error by relying on any of the legal authority cited in that Order [#37]. The Court's own review has found none. *See, e.g.*, Order [#37] at 17 (citing *Edge Construction, LLC*, 2015 WL 4035567, at *6 ("While [the plaintiff] asserts that failure to cooperate is a defense to its breach of contract claim and not to its bad faith claim, this court agrees with defendant that in order to prevail on its statutory unreasonable delay/denial claim, [the plaintiff] first has to prove entitlement to benefits. There are no benefits owed under the policy, however, if the insured failed to cooperate."), *aff'd*, *Sable Cove Condo. Assoc.*, 668 F. App'x at 847 ("[W]e AFFIRM for substantially the reasons stated in the district court's decision.").

Accordingly, the Court discerns no "clear error" here, and the Motion [#40] is **denied** with respect to Plaintiff's argument regarding his bad faith claims.

### IV. Conclusion

For the reasons set forth above,

IT IS HEREBY **ORDERED** that the Motion [#40] is **DENIED**.

Dated: November 19, 2020

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge